IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MT. VALLEY FARMS AND | : | 1:10-cv-2327 |
|   LUMBER PRODUCTS, L.L.C. | : | |
| MT. VALLEY TIMBER | : | |
|   RESOURCES, L.L.C. | : | |
| | : | |
|      Plaintiffs, | : | |
| | : | Hon. John E. Jones III |
|      v. | : | |
| | : | Hon. Mildred E. Methvin |
| FEDERAL CROP INSURANCE, | : | |
|   U.S. DEPT. OF AGRICULTURE, | : | |
| | : | |
|      Defendant. | : | |

## MEMORANDUM

### February 7, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation

("R&R") of Magistrate Judge Mildred E. Methvin (Doc. 25), filed on October 31,

2011, which recommends that this court reverse an administrative decision of the

Risk Management Agency ("RMA) of the United States Department of Agriculture

("USDA"), and enter judgment in favor of Plaintiffs, finding that they followed

good farming practices ("GFP") in 2009, thus permitting their crop insurance

claims be paid.  Defendant Federal Crop Insurance Corp. ("Defendant" or "FCIC")

1

filed objections to the R&R on November 11, 2011, to which the Plaintiffs

responded.  (Docs. 28 and 30).  Accordingly, this matter is ripe for disposition.

For the reasons set forth below, the Court will adopt the Magistrate Judge's R&R

in its entirety.

## I.    BACKGROUND[1]

Plaintiffs Mt. Valley Farms and Lumber Products, L.L.C. and Mt. Valley

Timber Resources, L.L.C. ("Lumber" and "Timber" respectively or "Plaintiffs"

collectively) own and operate apple and peach orchards on separate tracts of land

in Adams County, Pennsylvania.  Plaintiffs each purchased a crop insurance policy

from Agriserve covering their 2009 apple crops.[2]  The policies covered losses

caused by "drought, flood, or other natural disaster,"  but not losses caused by "the

failure of the producer to follow good farming practices." The term good farming

practices ("GFP") is defined in the Common Crop Insurance Policy Basic

Provisions under the Act as:

---

[1] Plaintiffs, two separately incorporated components of a family-owned orchard business, filed the instant civil action on November 10, 2010.  (Doc. 1). Plaintiffs named the FCIC as the sole Defendant to the action.  In the interest of judicial economy, the well-worded history of this case offered in Magistrate Judge Methvin's R&R will not be reproduced here.  In its place is a summary.

[2] Agriserve is an Approved Insurance Provider, defined as a private insurance company approved and reinsured by FCIC for providing coverage to producers participating in programs authorized by the Federal Crop Insurance Act ("the Act"). 7 C.F.R. § 400.701; 7 U.S.C. § 1501 *et seq.*

The production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance, including any adjustments for late planted acreage, which are: (1) for conventional or sustainable farming practices, those generally recognized by agricultural experts for the area ... [The insurer] may, or [the producer] may request [the insurer] to, contact FCIC to determine whether or not production methods will be considered to be "good farming practices."

(Doc. 7-1, at 37).  Bulletin MGR-05-010 states that it is the provider's

responsibility to decide:

[W]hether (1) production methods that were used by the producer, or will be used by the producer, are considered GFP in accordance with the terms of the policy, and (2) that the producer followed GFP for the insured unit in question.  This will typically occur during the loss adjustment process.

(Doc. 7-1, at 26).

In March of 2009, Agriserve sent its inspector and adjuster, Ronald

Sollenberger ("Sollenberger"), to Plaintiffs orchards to determine the ability of the

Plaintiffs to receive insurance coverage.  Sollenberger reported on the Plaintiffs'

fertilization program, feral bee pollination process, management of the orchard

operations, and of the orchards' condition.  Sollenberger's report indicated that 95-

100% of the Plaintiffs' acreage was insurable, and that the trees had "sufficient

vigor to produce the average yield computer for this unit." (Doc. 7-1, at 67).

3

On April 13, 2009, Lumber filed a loss claim with Agriserve, and Timber filed similar loss claims on April 13 and July 28, 2009 for the loss of Plaintiffs' 2009 apple crop.  In aid of evaluating of the claims, Agriserve sent Sollenberger to inspect plaintiffs' orchards on four separate occasions, three of which were during the growing season.  Agriserve also hired Win Cowgill ("Cowgill"), Professor and Head of Rutgers Cooperative Extension in New Jersey, to evaluate Plaintiffs' operations and issue an export report.  Agriserve also considered, in connection with the claims evaluation, a report of the USDA Farm Service Agency ("FSA").

Sollenberger's reports attributed the damage done to Plaintiffs' orchards to poor weather and other factors outside of the farmers' control.  Cowgill's report, however, conflicted with Sollenberger's four reports.  Although Cowgill recognized that he had not observed the orchards during the bloom season, Cowgill nonetheless offered his speculation that "with trees in such a weakened state[,] it would be hard to envision that they had adequate bloom to set crop." (Doc. 7-1, at 78).  He declared that Lumber and Timber were "not a well-managed orchard operation." (*Id.*).  The FSA report similarly offered a poor review of the farming practices utilized by Plaintiffs.

On November 16, 2009, Agriserve denied both Plaintiffs' insurance claims, substantially relying upon Cowgill's report and that of the FSA, and largely

ignoring the reports of its own adjuster, Sollenberger.  Agriserve based its denial of

Plaintiffs' claim on its determination that Plaintiffs did not follow recognized GFP

for the 2009 crop year.  In response, Plaintiffs requested administrative review of

Agriserve's decision.  The Raleigh Regional Office ("RRO") of the USDA's RMA

determined that the Plaintiffs had failed to follow GFP in five respects.  On

reconsideration, the RMA affirmed the RRO's GFP finding on three of the five

grounds.  Plaintiffs thereafter sought judicial review of the RMA's decision in this

Court. The matter was subsequently referred to Magistrate Judge Methvin for her

review.  In her resulting R&R, the Magistrate Judge recommends that this Court

reverse the findings of the RMA and enter judgment in favor of Plaintiffs, so that

their crop insurance claims are paid by Agriserve.

## II.    STANDARDS OF REVIEW

### A.    Review of Magistrate Judge's R&R

When objections are filed to the report of a magistrate judge, the district court

makes a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1);

*United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept,

reject, or modify, in whole or in part, the magistrate judge's findings or

recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. §

5

636(b)(1) permits whatever reliance the district court, in the exercise of sound

discretion, chooses to place on a magistrate judge's proposed findings and

recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423

U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.    7 U.S.C. §1508(a)(3)(B)(iii)(II) Review of Administrative Decision

Under 7 U.S.C. §1508(a)(3)(B)(iii)(II), the reviewing court's discretion is

"narrow" and the court may not "substitute its judgment for that of the agency."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43

(1983).  The agency is only required to "examine the relevant data and articulate a

satisfactory explanation for its action including a 'rational connection between the

facts found and the choice made.'" *Id.*  (quoting *Burlington Truck Lines v. United*

*States*, 371 U.S. 156, 168 (1962).  The reviewing court must determine whether the

agency's decision "was based on a consideration of the relevant factors and whether

there has been a clear error of judgment." *Id.* (quoting *Bowman Transp., Inc. V.*

*Ark-Best Freight Sys., Inc.,* 419 U.S. 281, 285 (1974), and *Citizens to Preserve*

*Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971), *abrogated on other grounds*

*by Califano v. Sanders,* 430 U.S. 99 (1997)).  An agency's decision may be found

arbitrary or capricious if:

> the agency has relied on factors which Congress has not intended it to
> consider, entirely failed to consider an important aspect of the problem,

6

offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* A court cannot "supply a reasoned basis for the agency's action that the agency itself has not given," but will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and *Bowman Transp., Inc.,* 419 U.S. at 286).

## III.   DEFENDANT'S OBJECTIONS

The Defendant's objections to the R&R voice the FCIC's opinion that Magistrate Judge Methvin's recommendation oversteps the scope of review afforded to the district court when reviewing a federal agency's administrative determination.  Defendant argues that the determination of whether the Plaintiffs followed GFP, at least as it relates to apple orchards, is "extremely technical and specialized," and, as such, the RMA should be afforded "great deference" in its handling of Plaintiffs' insurance claims.  The FCIC specifically argues that Magistrate Judge Methvin erred in the following ways: A) by misconstruing the agency's scope of review during the reconsideration process; B) by drawing factual conclusions not supported within the record when discussing pollination; C) by finding that RMA failed to consider important aspects surrounding Plaintiffs' disease control methods; D) by finding that RMA failed to consider all relevant

factors in rendering its decision that Lumber failed to adequately fertilize its orchard; and E) by misconstruing the burden of showing causation in a GFP determination.  We shall discuss the merits of each objection in turn.

## IV.   DISCUSSION

### A.   RMA's Scope of Review

As Magistrate Judge Methvin correctly notes, the RRO and the RMA were limited under the applicable law to a determination of whether Plaintiffs followed GFP in the 2009 growing season.  Matters of insurability or causes of crop loss unrelated to farming practices are beyond the scope of RMA's review and to the judicial review of RMA's reconsideration.  Title 7 C.F.R. § 400.91(a)(2), (b)(2). However, this section does not alleviate an administrative agency of its burden to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983).  Here, Magistrate Judge Methvin reasoned, and we agree, that the RMA did not articulate any reason as to why the reports of the FSA and Cowgill were favored over those of Sollenberger, Agriserve's own inspector and adjuster.  This absence of support does, in our view, justify Judge Methvin's determination that RMA's evaluation was arbitrary and capricious.

8

## B.    Pollination Analysis

Defendant argues that Magistrate Judge Methvin improperly used the successful pollination of Plaintiffs' peach trees, which were adjacent to the damaged apple orchard, as evidence that Plaintiffs' pollination methods must exemplify GFP.  It appears that Defendant is correct when noting that peach trees are self-pollinating while apple trees are not, thus Plaintiffs' decision not to rent bee hives to further pollinate the trees would not affect the peach trees as it would the apple trees. However, Magistrate Judge Methvin's comparison of peach trees to apples trees, which may have been an inartful one, was but a single point in a lengthy discussion about the use of commercial bee hives during the pollination process.  Magistrate Judge Methvin also cites a letter from Michael Trimmer, a sales representative from Helena Chemical Company, who wrote a letter in support of Plaintiffs' position,  in which he stated:

> The overwhelming majority of growers today do not rent hives, and the few that do rent hives use only a fraction of suggested amounts.  Growers that I know who have not rented bees for over ten years have not seen a difference in their apple crops compared to their neighbors who do rent hives.

(Doc. 7-3, at 30).  Most importantly, Magistrate Judge Methvin also relied upon Sollenberger's report made prior to the growing season wherein he concluded that the Plaintiffs' practice of relying on wild bees for pollination was GFP. Although

Defendant argues that Magistrate Judge Methvin misconstrued Sollenberger's statement by giving it more weight than a preliminary report deserves, this argument is unavailing because it was Agriserve's responsibility to ensure that the farmers it insures use GFP.  Agriserve knew that Plaintiffs were not renting bees prior to and at the time it issued its policy.  Thus, Magistrate Judge Methvin properly determined that the RMA could not now allow Agriserve to claim that the practice of using wild bees to pollinate the apple orchard is not GFP.  Second, since Sollenberger's statement establishes that Agriserve determined Plaintiffs' reliance on wild bees for pollination was GFP, all Plaintiffs must show to prove that they followed GFP with respect to pollination is that they in fact relied upon wild bees for pollination.  There is no dispute as to whether Plaintiffs relied upon wild bees, so their pollination practices must be considered GFP under the policy.

### C.    Rainfall Analysis and Plaintiffs' Disease Control Methods

While Defendant is correct in its assessment that Mr. Trimmer's statements, as they pertain to rainfall, cannot be relied upon because Mr. Trimmer has a business relationship with Plaintiffs and did not cite a published report to support his statements, Defendant's attempts to degrade the weight of Dr. Ngugi's analysis of rainfall and its affects on Plaintiffs' orchards are suspect.  Defendant cites a chart from the National Weather Service in an effort to show that Plaintiffs and Dr. Ngugi

10

overemphasized the affect of the rain on Plaintiffs' orchards.  (See Doc. 29-1).[3]

However, the National Weather Service chart was not included in the record and

made its first appearance in Defendant's objection to Magistrate Judge Methvin's

R&R.   As such, this Court has no obligation to consider the chart; however, even if

we were to consider it, the chart would not hold significant weight when compared

to Dr. Ngugi's report because the chart shows rainfall in Harrisburg, Pennsylvania

and not rainfall at the orchard in question, located in Adams County, Pennsylvania.

As a general report on rainfall in Harrisburg, the chart would seem to shed little

light on the issue of rainfall at Lumber's and  Timber's orchards that are situated

well south of the City.[4]

    Further, Magistrate Judge Methvin properly determined that Defendant's

assertion that Plaintiffs failed to follow GFP when they discontinued use of the

disinfectant spray upon detecting mature ascospores a few miles away from

Plaintiffs' orchards was unavailing.  By discontinuing their spraying regimen upon

the detection of apple scab, Plaintiffs followed the guidelines set out in the very

---

[3] The chart shows daily rainfall in Harrisburg during the months of April, May, and June of 2009.

[4] Similarly, Defendant's reliance on the general reporting of the *Fruit Times* is misplaced. Defendant encourages the court to read *Fruit Times* as a clear assessment that rainfall could not have played a major roll in the damaging of Plaintiffs' orchards.  However, Defendant's citation to a statement in the *Fruit Times* which reads that a rain and infection period occurred from April 13th through the 16th does not prove Defendant's point that no other rain periods occurred.

11

same *Fruit Times* article that Defendant repeatedly cites in support of its position

The article clearly states that a farmer should "discontinue any sterol inhibitor ... or

strobilurin ... applications for apple scab" once apple scab is detected. (Doc. 7-4, at

21.).  As such, we agree with Magistrate Judge Methvin that the Plaintiffs utilized

GFP when making their decision to discontinue the disinfectant spray.

### D.    Fertilization Analysis

Despite Defendant's objection, we also agree with Magistrate Judge

Methvin's analysis as to RMA's treatment, or lack thereof, of Plaintiffs'

fertilization procedures.  Specifically, Magistrate Judge Methvin determined that

the RMA's decision was not based on a consideration of all relevant factors and was

a clear error of judgment because the RMA based its decision regarding fertilization

only on a visual inspection, when other, objective tests were available. Based on our

review of the record, we agree with Magistrate Judge Methvin that the RMA's

determination regarding Plaintiffs' fertilization procedures based on a visual

inspection only was arbitrary and capricious.

### E.    Burden of Causation in a GFP Determination

Finally, we agree with Magistrate Judge Methvin that, even if there was a

hypothetical lapse in the Plaitniffs' GFP, the record lacks substantial evidence to

12

support a finding that the GFP was the cause of the crop loss.  Notably, the one report that directly addressed causation, Dr. Ngugi's report, concluded that poor weather conditions, not poor GFP, led to the infection and ultimate loss of Plaintiffs' apple crop.

## V.   CONCLUSION

Accordingly, for the reasons set forth above, the Defendant's objections are overruled and the R&R shall be adopted in its entirety.  An appropriate Order shall issue.